[S. F. No. 5773—Department Two.—June 29, 1912.]

# R. R. BRAY, Respondent, *v.* GEORGE W. LOWERY, Appellant.

APPEAL—AMENDED COMPLAINT SUPERSEDES ORIGINAL.—An original complaint may not be considered by the appellate court for any purpose, if a demurrer thereto has been sustained by the trial court, and the action has been tried on an amended complaint.

CONDITIONAL CONTRACT FOR SALE—DEFAULT OF VENDEE—RIGHT TO RETURN OF PURCHASE PRICE PAID.—A defaulting vendee under a conditional contract for the sale of personal property may not usually demand the return of the moneys paid on account of the sale.

ID.—CONSIDERATION—RECIPROCAL OBLIGATIONS OF PARTIES—FAILURE TO PERFORM—FAILURE OF CONSIDERATION.—In all such executory contracts the several obligations of the parties constitute to each, reciprocally, the consideration of the contract; and a failure to perform constitutes a failure of consideration,—either partial or total, as the case may be—within the meaning of section 1689 of the Civil Code.

ID.—POSSESSION RETAKEN BY VENDOR PRIOR TO VENDEE'S DEFAULT—ABANDONMENT OF CONTRACT BY VENDOR—RESCISSION BY VENDEE NOT NECESSARY TO RECOVERY OF PURCHASE PRICE.—Where the vendor under a conditional contract for the sale of personal property, the possession of which had been delivered to the vendee and which he was entitled to retain until default in the payment of the balance due on the purchase price, wrongfully retakes possession of the property before the vendee is in default and refuses to return it, the vendee, without any formal rescission of the contract on his part, may treat the contract as abandoned and annulled by the vendor, and may maintain an action against him for money had and received for the recovery of the portion of the purchase price that had been paid.

ID.—PROFITS REALIZED BY VENDEE FROM USE OF PROPERTY.—Under such circumstances, the vendee's right to recover the purchase price paid is subject to reduction to the extent of the profits, if any, realized by him from the use of the property.

ID.—EVIDENCE—IMPROPER CROSS-EXAMINATION OF PLAINTIFF.—In such action the court did not err in sustaining an objection to a question addressed to the plaintiff on his cross-examination, designed to ascertain the amount of money realized by him from the use of the property. While such questions would have been proper if addressed to the defendant's own witness, it was not proper upon cross-examination of the plaintiff.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

S. C. Wright, and William P. Hubbard, for Appellant.

Otto Irving Wise, and Henry J. Brodsky, for Respondent.

MELVIN, J.—The defendant appeals from a judgment against him for $5,750, and from the order denying his motion for a new trial. The action was one for money had and received and grew out of a transaction connected with an attempted conditional sale of three automobiles to plaintiff Bray by defendant Lowery. Plaintiff's theory of the case was that by the conduct of defendant the contract had ceased to exist and that he was entitled to the return of all of the money paid on the purchase price of the automobiles. Defendant by his answer denied all indebtedness and by cross-complaint demanded judgment for $275 which he alleged had been paid for the use and benefit of plaintiff.

On May 18, 1907, the parties to this action entered into an executory contract which was in writing whereby the plaintiff R. R. Bray was to have possession of and was eventually to become the owner of three certain automobiles upon consideration of certain payments which were to aggregate $8,250. It was understood and agreed that these automobiles were to be used by Bray for the purposes of public hiring. The title to the automobiles was to remain in the defendant George W. Lowery until the whole sum of $8,250 should be paid. Pursuant to the terms of the contract the sum of three thousand dollars was paid at the time of the delivery of the cars and two thousand dollars subsequently. The contract provided, generally speaking, that thereafter payments should be made at the rate of five hundred dollars per month, although there was a provision that if the machines ran less than five hours a day there was to be a certain reduction in the amount of the monthly installments. The sum of six thousand dollars was paid, one installment of five hundred dollars having been received and accepted by appellant Lowery on September 28,

1907, ten days after it became due. On October 18th another installment became due. It was not paid, and on November 18th a similar sum was payable under the terms of the contract, but as to the latter payment the court ruled, and so instructed the jury that, owing to the legal holidays proclaimed by the governor of the state of California for every day of the month of November, 1907, the respondent Bray was not bound to make his payment during that month. About the 20th of November, by mutual consent of the parties to the agreement of conditional sale, one of the automobiles was sold to a third person for eleven hundred dollars. Of this amount the sum of $250 was, by mutual consent, applied to the payment of a debt owed by Bray for repairs on the automobiles and the balance, $850, was credited on account of the purchase money. It will thus be seen that about November 20th plaintiff's account was credited with $6,850, with approximately fourteen hundred dollars still due to defendant. According to the testimony of plaintiff the other two cars were taken by Lowery, against plaintiff's protest and objection. This, he said, occurred on the 6th and 7th of November, 1907, and that after that time he never had the use of these automobiles in the rental service, although upon one occasion he was permitted on a written order of Lowery to take one of them out of a garage for purposes of demonstration. On December 31st, according to Bray's testimony, he demanded that these cars should be returned to him and then was informed that they had been sold at public auction, in accordance with the terms of their contract, that Lowery had bought them in and that Bray had no further interest in them. Bray testified that he had never received notice of any intended auction sale of the property in question. It was in evidence that the sale at auction was made on December 26, 1907, after advertisement in a newspaper, and that Lowery was the only bidder. At the trial the court instructed the jury that in no event could they give judgment for the eleven hundred dollars realized from the sale of the machine on November 20th. They were also told that the amount demanded by the cross-complaint, according to the court's understanding, was that portion of the eleven hundred dollars realized from the sale of one of the automobiles which had been expended on a bill for repairs. The court also instructed

the jury as follows: "This is an action for money had and received, that is to say, an action to recover money which it is claimed that, in equity and good conscience, the defendant should not retain. I have held that, in the very nature of this action, the defendant was entitled to show what profit, if any, the plaintiff made from the operation of the machines during the time they were in his custody. Upon that subject you have heard a great deal of evidence. If you find the plaintiff is entitled to recover, and you should find that he had made a profit out of the use of those machines during the time that he had them, then the defendant is entitled to have that amount, whatever you may find, if you find such an amount, deducted from the amount you find due the plaintiff."

Appellant takes the position that his act, in possessing himself of the automobiles, was not a breach of the contract because the respondent had defaulted in the payments due. Unquestionably, a defaulting vendee in a contract of this sort may not usually demand the return of the moneys paid on account of the sale. That rule is well established by such cases as *Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713] ; *Liver* v. *Mills*, 155 Cal. 459, [101 Pac. 299] ; *Muncy* v. *Brain*, 158 Cal. 300, [110 Pac. 945]. But respondent insists that there was no default on his part and that the retaking of the automobiles by appellant constituted a repudiation of the agreement which amounted to a failure of consideration, giving respondent the right to institute this sort of action. This was doubtless the view of the case which the jury took under the instructions of the court. The contract contained this provision: "In the event that said second party shall not be able to operate said cars by careful, prudent, industrious application to said work, then the balance of said sum shall be payable within two months from the date of the last payment as herein provided." It will thus be seen that the vendee was to have sixty days from the date of his last payment in case he should be unable to operate the cars. As appellant took them on or about November 7, 1907, and sold them on December 31st of that year, the respondent could not operate them during that period; he had, therefore, sixty days following November 20th, when ordinarily the full installment of

five hundred dollars would be due, in which to make that payment. By his own act appellant created this condition. / This case therefore comes within the rule stated in *Richter* v. *Union Land & Stock Co.,* 129 Cal. 372, [62 Pac. 40], as follows: "In all executory contracts the several obligations of the parties constitute to each, reciprocally, the consideration of the contract; and a failure to perform constitutes a failure of consideration—either partial or total, as the case may be—within the meaning of section 1689 of the Civil Code." (See, also, *Sterling* v. *Gregory,* 149 Cal. 121, [85 Pac. 305], and *Cleary* v. *Folger,* 84 Cal. 316, [18 Am. St. Rep. 187, 24 Pac. 280].)

Appellant calls our attention to the fact that the original complaint contained a count in which plaintiff prayed damages for breach of contract. This, he says, was an admission on the part of respondent that the contract was a subsisting agreement. But the demurrer to the original complaint was sustained and the cause was tried upon a complaint stating a cause of action only for money had and received. The original complaint may not be considered by us for any purpose.

Appellant assigns as error the sustaining by the court of objections to questions directed to plaintiff Bray on cross-examination, in which he was asked if he kept accurate books of account. If these rulings were erroneous they were cured by subsequent happenings, because, as counsel were permitted to examine the witness quite at length regarding his expenditures, it must have appeared to the jury whether he kept correct books or not.

Appellant's next point is based upon the assertion that an action for money had and received in a case like this may not be maintained unless the contract has become of no effect from a total failure of consideration—that a partial failure is not sufficient, and his counsel call our attention to section 1691 of the Civil Code, providing for prompt rescission and the restoration of everything of value received under a contract. They quote the following language from *Richter* v. *Union Land & Stock Co.,* 129 Cal. 372, [62 Pac. 40]: "Nor *where the failure of the consideration is total*—which implies, of course, that nothing of value has been received under the contract by the party seeking to rescind—is it necessary that a formal rescission be made before bringing suit. In such cases a suit may always be maintained for the recovery of the

consideration paid. (*Santa Clara etc. Fuel Co.* v. *Tuck,* 53 Cal. 304; *Rose* v. *Foord,* 96 Cal. 154, [30 Pac. 1114]; *Hayes* v. *Los Angeles County,* 99 Cal. 79, [33 Pac. 766]; 1 Chitty on Pleading, 362, note z; *Russ etc. Co.* v. *Muscupiabe etc. Co.,* 120 Cal. 521, [65 Am. St. Rep. 186, 52 Pac. 995].)'' They insist that under the foregoing authority and cases of like type, where partial failure of consideration is depended upon there must be a formal rescission of the contract before suit for the money paid may be instituted. To this contention respondent makes several answers. He says that in view of the jury's conclusion that there was a total failure of consideration (for the verdict was for the entire amount paid minus the eleven hundred dollars for which one of the cars sold and to which plaintiff formally disclaimed title) the decision does not conflict with appellant's theory. His counsel insist, however, that the right to maintain an action for money had and received exists whether the failure of consideration be partial or entire. They do not pretend that rescission on the part of respondent has taken place. They depend, they say, upon appellant's election to treat the contract as terminated. This position is entirely correct. By his seizure of the cars upon the claim that respondent was in default and by his refusal to return the property, appellant treated the contract as abandoned and annulled by respondent. Formal rescission on the part of the latter was, therefore, not necessary. (*Drew* v. *Pedlar,* 87 Cal. 443, [22 Am. St. Rep. 257, 25 Pac. 749].) In *Russ etc. Co.* v. *Muscupiabe etc. Co.,* 120 Cal. 529, [65 Am. St. Rep. 186, 52 Pac. 998], the rule was thus stated: ''It is contended by respondent that it does not appear that the irrigation company has at any time been without assets so that its promise was without value, or that its obligations may not be ultimately fulfilled and that it may have assets out of which its debts may be paid or payment enforced, and therefore concludes that the failure to fulfill the contract was only partial, and that a partial failure without rescission would not be a defense. . . . But a failure of consideration, either total or partial, may be pleaded as a defense to an action upon a promissory note, either wholly or *pro tanto.* (See *Drew* v. *Towle,* 27 N. H. 424, [59 Am. Dec. 380], and numerous authorities there cited; 2 Am. & Eng. Ency. of Law, p. 369, and notes; *Tillotson* v. *Grapes,* 4 N. H. 444.)'' In *Phelps* v.

*Brown,* 95 Cal. 576, [30 Pac. 774], it was held that the voluntary abandonment of a contract by vendors left the money of the vendee in their hands subject to suit for its recovery. In such a suit as this the right to recover by the respondent would of course be subject to the credit for the profit, if any, realized from the use of the cars. This was emphatically stated to the jury in an instruction which is quoted herein. Upon the testimony the jury found, in effect, that there had been no such profit.

Appellant assigns as error the sustaining of an objection to the following question addressed to the plaintiff: "You took in a large amount of money, did you not, by the operation of those cars during that period of time?" While the question would have been proper if addressed to appellant's own witness, it was not proper upon cross-examination of the respondent.

The instructions were drafted substantially in accordance with the views herein expressed. It is unnecessary to review them in detail. It is sufficient to say that they correctly stated the law to the jury.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.